IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PAULA GROVER                                                              PLAINTIFF

V.                              CASE NO. 5:18-CV-05185

ANDREW M. SAUL,[1] Commissioner
Social Security Administration                                            DEFENDANT

OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 16) of the Honorable Erin L. Wiedemann, Chief United States Magistrate Judge for the Western District of Arkansas, filed in this case on November 7, 2019. The Magistrate Judge recommends affirming the Administrative Law Judge's ("ALJ") decision to deny Plaintiff Paula Grover's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act. Ms. Grover filed objections to the R&R (Doc. 17), and the Court has now reviewed the entire case *de novo*, paying particular attention to those findings or recommendations to which objections were made. *See* 28 U.S.C. 636(b)(1)(C). For the reasons stated herein, Ms. Grover's objections are overruled, and the R&R is adopted in its entirety.

I. BACKGROUND

Ms. Grover filed her applications for DIB and SSI benefits on July 27, 2016, alleging an inability to work since March 3, 2016, due to spinal stenosis, bone spurs on the spine, carpal tunnel syndrome of both hands, numb fingers, and radiculopathy. The ALJ found that she had severe impairments, including degenerative disc disease, carpal tunnel

---

[1] Andrew M. Saul has been appointed to serve as Commissioner of Social Security and is substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d)(1).

1

syndrome, disorder of female genital organs, and obesity. However, the ALJ concluded that these impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments in Appendix I, Subpart P, Regulation No. 4. According to the ALJ, Ms. Grover retained the residual functional capacity ("RFC") to perform light work with some restrictions. DIB and SSI benefits were therefore denied.

Ms. Grover's first objection is that the ALJ did not properly consider and evaluate her subjective complaints using the *Polaski* factors. In particular, Ms. Grover argues that substantial evidence in the record establishes that her back pain is disabling because she has not experienced any significant improvement in her pain and mobility since her back surgery. As for her symptoms of carpal tunnel syndrome, Ms. Grover contends that she still has moderately severe restrictions with respect to her right wrist, even after carpal-tunnel release surgery. Finally, with regard to her symptoms of persistent urinary pain and incontinence, she maintains that there is no evidence in the medical record to support the R&R's conclusion that these symptoms were greatly improved with medication. In fact, Ms. Grover believes that the medical evidence indicates her urinary issues have worsened since June of 2017.

Ms. Grover's second objection is to the ALJ's RFC determination of light work. She believes the medical record does not support such a determination.

Her third objection is that the ALJ improperly discounted or disregarded some of the opinions of one of her treating physicians, Dr. Stephen Irwin. In Ms. Grover's view, the Magistrate Judge did not adequately explain why substantial evidence supported the ALJ's finding that Dr. Irwin's recommendations about lifting, bending, and twisting restrictions were inconsistent with the record as a whole. Ms. Grover also believes the

Magistrate Judge failed to identify the evidence she relied on in arriving at her opinions about Dr. Irwin. The Court will take up each of Ms. Grover's objections in turn.

## II. OBJECTIONS

### A. Ms. Grover's Subjective Complaints

According to the R&R:

> The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

(Doc. 16, p. 13).

The above five considerations are known as the *Polaski* factors. Ms. Grover contends that the ALJ improperly evaluated her subjective complaints of back pain, carpal tunnel syndrome, and urinary issues, and the Magistrate Judge erred in finding the ALJ's analysis to be adequate. The R&R correctly noted that an ALJ may discount subjective complaints where inconsistencies appear in the record as a whole, and an ALJ may also evaluate a claimant's credibility regarding her subjective complaints. (Doc. 16, p. 13). The Court has reviewed the entire medical file and finds that Ms. Grover's objections about the sufficiency of the evidence should be overruled. The ALJ properly evaluated her subjective complaints and supported his opinions with citations to the medical evidence in the file.

#### 1. Back Pain

Beginning with Ms. Grover's complaint of back pain, the ALJ explained that although Ms. Grover testified that her back pain was intense and persistent and limited her from performing any work at all, this testimony was "inconsistent with the medical

3

evidence and other evidence in the record . . . ." (Doc. 9, p. 21). The medical evidence showed that after Ms. Grover underwent lumbar spinal surgery in June of 2016, her back pain and leg weakness/numbness significantly improved. She participated in physical therapy directly after surgery for approximately three months, beginning in August of 2016. The discharge summary written by Ms. Grover's physical therapist states that in October of 2016, Ms. Grover was walking 15–20 minutes a day, was exercising regularly at home, and was able to accomplish "lifting and recreational activities with less pain and less irritation." (Doc. 9, p. 636). Ms. Grover reported that her pain had decreased after surgery to a level of 0–2/10. *Id.* at p. 635.

In November of 2016, Ms. Grover made a visit to her primary care physician's office and disclosed that she was "walking more" and "[f]eeling well overall." *Id.* at p. 753. During her follow-up appointment with her spinal surgeon on August 1, 2017, she did complain about "a little bit of back pain" and "[a] little bit of leg numbness and tingling symptoms," but she also admitted that she had stopped doing her core strengthening exercises at that time. *Id.* at p. 939. Despite her complaints of "a little bit" of pain and numbness, her motor strength for her lower extremities (bilaterally) scored a 5/5, and her surgeon observed that she was "mov[ing] well down the hallway and around the room." *Id.* He also noted that he was "happy with how she is doing" and encouraged her to follow up with him on an as-needed basis. *Id.*

In view of the medical records summarized above, the Court agrees with the R&R's assessment that substantial evidence shows that Ms. Grover's back pain improved with surgery, physical therapy, medication, and exercise during the time period that she was

4

eligible for benefits. The Court therefore affirms the ALJ's finding that Ms. Grover's back pain and related symptoms are serious, but not disabling.

### 2. Carpal Tunnel Syndrome

Ms. Grover argues that a recent set of tests show that her carpal tunnel syndrome in her right wrist is still quite severe, even after surgery. She contends that this new evidence stands in direct conflict with the ALJ's conclusion that her hands and wrists improved after carpal-tunnel release surgery.

As the Magistrate Judge observed in the R&R, the ALJ acknowledged that Ms. Grover continues to experience symptoms of numbness in her fingertips after her two hand surgeries; however, substantial evidence supports the ALJ's finding that Ms. Grover's carpal tunnel syndrome is not so severe as to be disabling. In particular, the ALJ's RFC assessment took into account a restriction on Ms. Grover's ability to perform fingering on a bilateral basis. See Doc. 9, pp. 57–58. The Court finds that the R&R correctly noted that the RFC assessment performed by the ALJ appropriately considered any limitations Ms. Grover may experience based on her continuing symptoms of carpal tunnel syndrome.

### 3. Urinary Issues

Lastly, Ms. Grover maintains that there is no evidence in the record to support the R&R's conclusion that her urinary issues greatly improved with medication. Instead, she believes the evidence shows that her symptoms of incontinence have only worsened over time. The Court disagrees. The record supports a conclusion that Ms. Grover's symptoms of urinary pain and urgency have been adequately controlled through medication.

The records of Ms. Grover's urologist reveal that she was examined on September 7, 2016, and at that time complained of pelvic pain and incontinence. The doctor observed that she had experienced "previous noted improvement" of these symptoms when she was taking the drugs Vesicare and Neurontin, but that "she stopped taking Neurontin 2 weeks ago," and her symptoms of urinary frequency and urgency had "increased" since then. (Doc. 9, p. 551). On October 27, 2016, she had a follow-up appointment with the urologist where she was asked to give a urine sample for analysis. *Id.* at p. 850. Her doctor believed that she "may have [a] UTI ['Urinary Tract Infection']" and prescribed her an antibiotic. *Id.* The same urologist saw her just two weeks later on November 10, 2016. During that visit, the doctor noted that her "[p]ain resolved for the most part and likely [was] related to stress from coughing . . . ." *Id.* at p. 868. His notes also stated that her "incontinence improved and UTI resolved . . . ." *Id.* She was then ordered to continue taking her prescribed medication, Neurontin and Vesicare. *Id.* Because her urinary complaints had apparently been resolved, the urologist instructed Ms. Grover to "[r]eturn in about 6 months (around 5/10/17) for routine evaluation." *Id.* at p. 872.

Seven months later, on June 6, 2017, Ms. Grover reported for the last documented urology appointment in the medical file. She told the doctor during the appointment that her pelvic pain had improved with medication. *Id.* at p. 914. Though she also reported worsening incontinence, she agreed with the doctor that this symptom was most likely caused by a chronic cough, which she was instructed to treat through her primary care physician. *Id.* The evidence outlined above demonstrates that the ALJ's findings concerning Ms. Grover's urinary symptoms are supported by substantial evidence.

### B. Erroneous RFC Determination

"A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). The Court has considered the basis for the ALJ's RFC assessment. Ms. Grover asserts that "the ALJ did not actually perform any analysis of her symptoms," so his RFC finding is incorrect. (Doc. 17, p. 4). As explained in Section II.A.1.–3. of this Opinion, the ALJ's analysis of the medical records is correct. Accordingly, substantial evidence supports the ALJ's RFC assessment in light of her medical restrictions. This objection is overruled.

### C. Failure to Properly Consider Dr. Irwin's Opinion

Ms. Grover's final objection concerns an opinion that was offered by one of her treating physicians, a pain-management specialist named Dr. Stephen Irwin. Ms. Grover contends that Dr. Irwin's opinion as to her functional limitations was improperly ignored or rejected by the ALJ. The Court disagrees.

Dr. Irwin evaluated Ms. Grover on May 24, 2016, and at that time, she had not yet had back surgery. During the appointment with Dr. Irwin, Ms. Grover asked him for his opinion about whether she should have back surgery. (Doc. 9, p. 473). He opined that since she had "exhausted her options," it was reasonable to go forward with the surgery. *Id.* In conjunction with that recommendation, Dr. Irwin advised that she should continue to do physical therapy, which would help her in the long run. Further, he told her that "[s]he really should not continue to work as a dog groomer as it involves lifting, twisting, bending that are not good for back now or after surgery." *Id.* The same day he offered these opinions, he also wrote a note to Ms. Grover's employer, Petco, advising that she

should not lift anything heavier than ten pounds and should not twist or bend. *Id.* at p. 833. At the time, Ms. Grover was working as a dog groomer for Petco.

Ms. Grover believes that Dr. Irwin's lifting, twisting, and bending restriction that he issued on May 24, 2016, was intended to apply even after surgery. This is not a reasonable interpretation of the evidence. It goes without saying that the back pain and lack of mobility Ms. Grover experienced prior to surgery (when Dr. Irwin made his recommendation) was different than after surgery. Ms. Grover's spinal surgeon observed her post-operatively and made specific recommendations regarding walking, exercise, and restricted movements, based on her actual capabilities. *See, e.g.*, Doc. 9, p. 808. The surgeon's opinions regarding her limitations should be afforded greater weight than Dr. Irwin's opinions, under the circumstances. This objection is overruled.

### III. CONCLUSION

As all objections are **OVERRULED, IT IS ORDERED** that the R&R (Doc. 16) is **ADOPTED IN ITS ENTIRETY**, and the final decision of the ALJ to deny the Plaintiff benefits is **AFFIRMED**. Judgment will enter accordingly.

**IT IS SO ORDERED** on this 19th day of December, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE